CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 1 5 2009

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

ROBERT EDWARD LEE SHELL,       )
                               )
         Plaintiff,            )    Case No. 7:09CV00278
                               )
v.                             )
                               )    **MEMORANDUM OPINION**
                               )
                               )    By: Glen E. Conrad
CHARLES PRUITT, DR. WILLIAM    )    United States District Judge
MASSELLO III,                  )
                               )
         Defendants.

       Plaintiff Robert Edward Lee Shell, a Virginia inmate proceeding pro se, brings this action as a civil rights complaint pursuant to 42 U.S.C. § 1983, with jurisdiction vested pursuant to 28 U.S.C. § 1343. In his complaint, Shell alleges that the defendants, two employees of the Virginia Department of Forensic Science who testified at Shell's trial, gave false testimony that caused Shell's trial to be unfair. He seeks monetary damages against them. Upon consideration of the complaint, the court finds that this action should be dismissed pursuant to 28 U.S.C. § 1915A(b)(2), because the defendants are immune from suit.

### Background

       Shell, a professional photographer, was tried and convicted in August 2007 in the death of one of his models, Marion Franklin, who was also his girlfriend.[1] During the Commonwealth's case, Charles Pruitt testified as an expert in photography and audio. According to Shell, Pruitt testified falsely that in June 2003, it would have been impossible for someone to alter the "date/time fields of EXIF information in [a sequence of 600] digital image files because the first EXIF editing software application, which he identified as EXIFER was not available until November 2003." (Compl. Attach. 1, July 9, 2009.) Pruitt also testified that even using

---

[1] As the court does not have any of the state court records from Shell's criminal trial, the court here relates Shell's allegations from the complaint about the testimony of the defendants.

EXIFER, changing the field information on so many images would have been highly "labor intensive." (Id.) Shell asserts that he has documentation to disprove the accuracy of Pruitt's testimony. He asserts that EXIFER software was available at no cost over the internet which had the ability to edit the date/time fields as early as July 31, 2001. He claims that as a "batch processing application," EXIFER can change information on a sequence of "600 images in less than ten minutes." (Id.) Shell also asserts that Pruitt's admitted ignorance of certain facts related to the case demonstrated that Pruitt was not actually an expert in digital imaging, whereas Shell is an internationally known expert in that field who has published a number of books and articles on the subject.

Shell also asserts that Dr. William Massello testified falsely on August 27, 2007 that Franklin was dead in the last photographs that Shell took of her on June 3, 2003 at 5:39:29 and 6:53:29 according to date/time information on the images files. Massello based his conclusion on the fact that ligature marks on Franklin's upper thighs, created by 1/4-inch nylon ropes tightly tied and removed before the first of the photos were taken, had not faded by the time the later photo was taken. Massello testified that if Franklin had been living, the ligature marks would have faded in that amount of time. Shell asserts that in his many years of experience as a professional photographer, "ligature marks, even those from elastic socks, underwear, watchbands, jewelry and many other things can persist for remarkably long times and cause problems in photography." He and other photographers had developed "a 'two hour rule' advising models not to wear anything tight within two hours of a photo shoot" in hopes of avoiding the appearance of ligature marks. Shell offers documentation that purportedly supports his argument that ligature marks of the type seen on Franklin in the June 3, 2003 photographs could have lasted as long as 75 minutes on a living person.

Shell claims that this false testimony by Pruitt and Massello made it impossible for Shell to have received a fair trial. He asserts that their testimony thus violated his constitutional rights, and on that ground, he seeks monetary damages against them.

- 2 -

## Discussion

Witnesses, including individuals who are employed by a state agency or department, enjoy absolute immunity against § 1983 claims for monetary damages based on their testimony offered during a judicial proceeding. See Briscoe v. LaHue, 460 U.S. 325, 326 (1983) (police officer); Burke v. Miller, 580 F.2d 108, 110 (4th Cir. 1978) (medical examiner). This long-standing immunity principle furthers the fundamental truth-seeking function of the judicial process:

> A witness who knows that he might be forced to defend a subsequent lawsuit, and perhaps to pay damages, might be inclined to shade his testimony in favor of the potential plaintiff, to magnify uncertainties, and thus to deprive the finder of fact of candid, objective, and undistorted evidence. . . . But the truth-finding process is better served if the witness's testimony is submitted to the crucible of the judicial process so that the factfinder may consider it, after cross-examination, together with the other evidence in the case to determine where the truth lies.

Briscoe, 460 U.S. at 333 (internal quotations and citations omitted). A complaint filed by an inmate "seek[ing] redress from . . . a[n] employee of a governmental entity" may be summarily dismissed under § 1915A(b)(2) if the complaint "seeks monetary relief from a defendant who is immune from such relief."

Shell's claims against Pruitt and Massello are based solely on testimony that these governmental employees offered during Shell's criminal trial. He seeks monetary damages against them, pursuant to § 1983. As the defendants have absolute immunity against such claims, the court must summarily dismiss Shell's complaint, pursuant to § 1915A(b)(2). An appropriate order shall be entered this day.

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this memorandum opinion and the accompanying order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

- 3 -

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 15th day of July, 2009.

_____
United States District Judge